IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 05 CR 471-4 |
| | ) | |
| MICHAEL ERVIN | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In 2005, Michael Ervin was charged along with others for conspiracy to distribute more than 50 grams of crack cocaine and related offenses. He pled guilty in August 2006. At the time, the governing statute imposed a mandatory minimum sentence of 10 years imprisonment and a maximum sentence of life imprisonment for crack cocaine offenses involving more than 50 grams.

At sentencing, the Court concluded that Ervin was responsible for over 1.5 kilograms of crack cocaine, which resulted in a Sentencing Guidelines offense level of 37. Due to his prior convictions, Ervin qualified as a career offender under the Guidelines, but that determination resulted in a lower offense level (34), so the Court applied the higher offense level that had been calculated based on the drug quantity. Ervin's resulting advisory sentencing range was 360 months to life. The government asked for a sentence of 540 months (45 years); the defense asked for sentence of 120 months (10 years), the mandatory minimum. The Court imposed a sentence of 300 months imprisonment (25 years).

On appeal, the Seventh Circuit remanded the case to permit the Court to

resentence Ervin after considering the Guidelines' disparity in treatment of crack cocaine as compared with powder cocaine. At the time of resentencing, the higher advisory sentencing range for Ervin was the one calculated under the career offender guideline, which was 262 to 327 months. On August 5, 2010, the Court imposed a sentence of 240 months (20 years).

The Fair Sentencing Act, which was adopted on August 3, 2010, two days before Ervin's resentencing, increased the amount of crack cocaine needed to trigger the statutory range of a minimum of 10 years imprisonment and a maximum of life. This revision applied to any offender who committed a crack cocaine offense before August 3, 2010 but was not sentenced until after that date. That said, the Fair Sentencing Act did not have a real impact on Ervin's revised sentence. Rather, the lower sentence was attributable to the Court's consideration of the crack/powder disparity under the Sentencing Guidelines.

Ervin, who has been imprisoned since his arrest in or about May 2005, has now moved the Court under the First Step Act for a further reduction of his sentence. Section 404(b) of the Act states as follows:

> (b) Defendants Previously Sentenced.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

Pub. L. 115-291, 132 Stat. 5194, § 404(b). Section 404(a) of the Act defines "covered offense" as follows:

> (a) Definition of Covered Offense.—In this section, the term ``covered offense'' means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the

>   Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that
>   was committed before August 3, 2010.

*Id.* § 404(a).

The first question is whether the Court imposed Ervin's sentence "for a covered offense" within the meaning of section 404(a). The answer is yes. The Court sentenced Ervin for violation of a criminal statute for which the statutory penalties were modified under the Fair Sentencing Act. The government contends that in determining whether Ervin was sentenced for a covered offense, the Court should look to whether the Fair Sentencing Act affected the sentence in his particular case—which it did not, as the Court has indicated. In support of this argument, the government contends that in the phrase, "a violation of a Federal criminal statute, the statutory penalties for which were modified," the words "for which" modify the term "violation," and "violation" should in turn be read as focusing on the particular facts of the defendant's case, not the federal criminal statute he violated.

This is a tortured and unnatural reading of the statutory language. The phrase in question refers to whether "the statutory penalties" were modified, which reflects a focus on the criminal statute that was violated, not on the facts of the defendant's particular case. And the most natural reading of the words "for which" is to take them as referencing the nearest antecedent, which in this case is "a Federal criminal statute." For these reasons and those discussed by Judge William Smith in *United States v. Pierre*, 372 F. Supp. 3d 17, 21-22 (D.R.I. 2019), the Court agrees with the majority of judges who have determined that section 404(b) calls for a court to examine whether the penalties for the criminal statute that was violated were modified under the Fair Sentencing Act, not at the facts of the defendant's particular case. *Accord, e.g., United*

3

States v. Wright, No. 03 CR 362-2, 2019 WL 3231383, at *3 (N.D. Ill. July 18, 2019) (Castillo, J.); *United States v. Johnson*, No. 01 CR 543, 2019 WL 2590951, at *3 (N.D. Ill. June 24, 2019) (Leinenweber, J.). The Court therefore concludes that Ervin is eligible for a reduction of his sentence under section 404(b) of the Fair Sentencing Act.

The next question is whether the Court should reduce Ervin's sentence. The Court has reviewed all of the materials submitted in connection with Ervin's original sentencing in 2007 and his resentencing in 2010. The offense he committed was quite severe; he was a high-ranking member of a street gang who, over a period of years, collected a "street tax" from dealers who were selling drugs for the gang. And the gang distributed a very significant quantity of heroin and crack cocaine, highly dangerous narcotics the sale and use of which have caused untold harm to people and communities in the Chicago area and elsewhere. Moreover, Ervin had a significant criminal history prior to his conviction for this offense, including a 1986 conviction for robbery at age 19; a 1988 weapons conviction at age 22 for which he received a prison sentence along with revocation of his probation on the robbery offense; a narcotics possession offense at age 26 for which he received another prison term; another weapons possession offense at age 27, resulting in his third prison term; a conviction at age 29 for narcotics distribution and weapons possession, resulting in another prison term; and an assault conviction in Missouri at age 33, resulting in a suspended sentence and a term of probation.

In addition, at Ervin's original sentencing, the government presented evidence of Ervin's involvement in violent activity, specifically a shooting (which did not result in anyone actually being shot). The Court, after hearing this evidence and considering

4

both sides' arguments, concluded that Ervin presented "a significant danger to the public." May 23, 2007 Tr. (dkt. 920-4) at 54 (ECF page 55 of 61). The Court rejected Ervin's argument for a ten-year sentence, stating:

> I don't think I can make any prediction or assumption or inference that I'm comfortable with that Mr. Ervin would at any time in the near future, even with supervision, be able to be drug free and crime free at the same time. And for that reason, there's a significant need to protect the public.

*Id.* at 55 (ECF page 56 of 61). The Court also rejected, however, the government's argument for a forty-five-year sentence, finding it excessive, in part because "I do think that at some point in the future, and it's difficult to predict precisely when that would be, that Mr. Ervin is unlikely to be a danger to anybody." *Id.* at 57 (ECF page 58 of 61).

Finally, Ervin's motion and accompanying exhibits reflect that he has made a diligent effort to improve himself while incarcerated. The presentence report reflects that he has a very supportive family. And he has served just short of 15 years in custody, vastly more than the longest period of incarceration he had served before this, which appears to have been three years or perhaps a bit less. And at least at matters currently stand, following his release from prison, Ervin will be on supervised release for the rest of his life, and the Court will not hesitate to send him back to prison for violating his supervised release if he goes astray. But because Ervin is now 52 years old and has nearly a third of his life in custody for the present offenses, there is good reason to hope that he has had enough of prison and thus that he will not return to his previous criminal lifestyle following release. In addition, the lifetime term of supervised release imposed in the original sentence will enable sufficient monitoring of whether Ervin has, in fact, turned a corner in his life.

In sum, the Court finds that a reduced sentence as set out below will be

5

sufficient, but not greater than necessary, to accomplish the purposes set out in 18 U.S.C. § 3553(a).

## Conclusion

For the reasons stated above, the Court grants Michael Ervin's motion for a reduced sentence [1539], terminates as moot his motion for a copy of docket entries relating to the motion [1560], and reduces Ervin's sentence on count 1 by 18 months, to a total of 222 months. As before, the sentence on count 1 will run concurrent with Ervin's 48-month sentences on counts 17 and 18, which are also concurrent with each other. All other terms of the judgment dated August 5, 2010 [1221] remain unchanged, including the lifetime term of supervised release, which the Court finds necessary given Ervin's previous criminal history and the other factors set out when the Court pronounced sentence originally. The Court directs the Clerk to prepare an amended judgment and commitment order for entry by the Court.

Date: April 21, 2020

_____
MATTHEW F. KENNELLY
United States District Judge